UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF FLORIDA

                                   CASE NO. 12-22302-CIV-ALTONAGA
                                   MAGISTRATE JUDGE P.A. WHITE

STEVEN KIRKLAND,                :

        Plaintiff,              :

v.                             :              REPORT OF
                                         MAGISTRATE JUDGE
ALONZO PERKINS and             :

CHRISTOPHER BARNETT,           :

        Defendants.            :
_____

                            I. Introduction

        Plaintiff Steven Kirkland, who is confined at Santa Rosa
Correctional Institution, filed a pro se civil rights complaint
pursuant to 42 U.S.C. §1983 for damages and other relief concerning
events that allegedly occurred while he was confined at Everglades
Correctional Institution in 2012. After an Order affirming the
Preliminary Report, the case has remained pending on Kirkland's
claim that he was sexually assaulted by Defendant Barnett and that
Barnett allegedly retaliated against him by pepper spraying him.
Kirkland's claim against Defendant Perkins for failure to intervene
after allegedly being advised of Barnett's actions also remains
pending. These claims are against the defendants in their personal
capacity.

        This Cause is before the Court upon Defendant's motion for
summary judgment (DE# 122), as to which the Plaintiff was advised
of his right to respond. In support of their motion, the Defendants
have submitted a Statement of Uncontested Facts (DE# 123), along
with multiple exhibits: Exhibit A, Deposition of Steven Kirkland
(DE# 124-1); Exhibit C, Affidavit of Christopher Barnett (DE# 125-
1); Exhibit D, Affidavit of Officer Rodolfo Gonzalez (DE# 125-2);
Exhibit E, Affidavit of Classification Supervisor Scott Siegler
(DE# 125-3); Exhibit F, Affidavit of Classification Officer Angela
Williams with Grievances Filed by Plaintiff (DE# 125-4); Exhibit G,
Affidavit of Jeanette Jarrett, R.N. (DE# 125-5); and Exhibit H,
Affidavit of Rickey Rowe, L.P.N. (DE# 125-6); Exhibit I, Affidavit

of Doris Hartley, R.N. (DE# 126-1); Exhibit J, Affidavit of Dr. Rita Abislaiman (with exhibits)(DE# 126-2, 126-3); Exhibit K, Affidavit of Inspector Carrie Ryan (with Plaintiff's sworn statement and Inspector General Files(DE# 126-4); Exhibit L, Affidavit of Lieutenant Gregory Hines. (DE# 126-5). The contents of these exhibits are discussed below.

In response, Plaintiff Kirkland submitted a Statement of Disputed Facts (DE# 133); Declaration in Opposition to Defendant's Motion for Summary Judgment (DE# 138); along with multiple exhibits (DE# 139): Exhibit A, Affidavit of Steven Kirkland; Exhibit B, Affidavit of Inmate Anthony Parker; Exhibit C, Affidavit of Inmate Emmanuel Velazquez; Exhibit D-K, Affidavits of Inmate Steven Kirkland; Exhibit L, Interrogatories of Defendant Christopher Barnett, Exhibit M, Affidavit of Steven Kirkland; Exhibits N, Defendant Alonzo Perkins Response to Written Depositions; Exhibit O-P, Defendant Alonzo Perkins Response to Request for Admissions; Exhibit Q-R, Affidavits of Inmate Steven Kirkland; Exhibit S, Affidavit of Inmate Via Carlos; Exhibit T, Defendant Alonzo Perkins Response to Interrogatories; Exhibit W, Defendant Christopher Barnett's Response to Request for Admissions; and Exhibit U, Affidavit of Inmate Steven Kirkland. Defendants Vidal and Durrance have filed a Reply in Support of Motion for Summary Judgment. (DE# 91).

The Defendants filed a reply in support their motion for summary judgment. (DE# 147). In response the Plaintiff filed his objections to that reply. (DE# 155). He also filed a response to the motion for summary judgment (DE# 157), a declaration in opposition to the motion (DE# 158), and a brief in opposition to the motion for summary judgment (DE# 160).

II. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In

_Celotex Corp. v. Catrett_, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." _See_ _Fed.R.Civ.P._ 56(c); _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. _See_ _Celotex Corp._, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" _See_ _Matsushita Elec. Indus. Co. v._ _Zenith Radio Corp._, 475 U.S. 574, 587 (1986)(_quoting_ _First Nat'l_ _Bank of Ariz. v. Cities Serv. Co._, 391 U.S. 253, 289 (1968)). _See_ _also_ _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

It is well accepted that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." _Tannenbaum v. United_ _States_, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se

3

litigant does not escape the essential burden under summary
judgment standards of establishing that there is a genuine issue as
to a fact material to his case in order to avert summary judgment."
Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Accordingly,
the nonmoving party, even if a *pro se* prisoner, cannot rely solely
on his complaint and other initial pleadings to contest a motion
for summary judgment supported by evidentiary material, but must
respond with affidavits, depositions, or otherwise to show there
there are material issues of fact which require a trial.
Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir.
1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987). If the
evidence presented by the nonmoving party is merely colorable, or
is not significantly probative, summary judgment may be granted.
Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; Baldwin
County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992).
"A mere 'scintilla' of evidence supporting the opposing party's
position will not suffice; there must be enough of a showing that
the jury could reasonably find for that party." Walker v. Darby,
911 F.2d 1573, 1577 (11th Cir. 1990)(*citing* Anderson v. Liberty
Lobby, Inc., 477 U.S. at 252). Of course, in making the
determination whether genuine issues of material fact are present,
the court "must view all the evidence and all factual inferences
reasonably drawn from the evidence in the light most favorable to
the nonmoving party," see Stewart v. Happy Herman's Cheshire
Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve
all reasonable doubts about the facts in favor of the nonmovant."
See United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555,
1558 (11th Cir. 1990).

     The plaintiff has been advised regarding the requirements
under Fed.R.Civ.P. 56 for a proper response to the defendants'
motion for summary judgment. (DE# 104). As indicated, the Plaintiff

filed pleadings in opposition with supporting exhibits.

<u>III. Facts</u>

It is necessary prior to addressing the motion for summary judgment to determine if there exists a genuine dispute of a material fact. In order to make this determination it is necessary to review the evidence submitted by the parties to this point.

<u>Allegations of Initial Complaint</u>

The plaintiff's allegations encompass what he describes as a continuing pattern of sexual harassment by defendant Barnett. In his initial complaint the Plaintiff claimed that Barnett targeted him for unwanted sexual advances and called him degrading names. He alleged that on May 9, 2012 Barnett sexually assaulted him by grabbing his buttocks while removing handcuffs. He claims that he reported this incident through an informal grievance filed that same day.[1] He further alleged that on May 11, 2012 Barnett conducted a search of his cell. During the course of the search Barnett allegedly threw the Plaintiff's photos and other correspondence in the toilet. He further alleged that Barnett removed the grievances he had filed against Barnett and removed all of the grievance forms from the cell. Later on May 11, Barnett allegedly came by his cell during a security check. At this time Barnett allegedly sexually harassed him by ordering him to bend over and expose his bare buttocks. The Plaintiff claims that Barnett threatened that if he did not do as told, Barnett would spray him. Allegedly Barnett then opened the food slot in the cell door and began spraying the Plaintiff with chemical spray. The Plaintiff filed a grievance regarding the May 11 incident which was received on May 15, 2012 and forwarded to the Office of the

---

[1]The petitioner has attached a grievance form, however the form attached has no indication that it was actually submitted.

Inspector General.[2]

The Plaintiff has further alleged that this was not the first incident or occurrence of a complaint about Barnett. This allegation is made upon "information and belief" and fails to make specific allegation based upon personal knowledge.[3] He alleges that Defendant Perkins failed to reassign Barnett to a different job placement or otherwise protect Plaintiff from further exposure to Barnett's alleged harassment despite knowledge of a significant risk of serious physical harm. As a result of this indifference the Plaintiff contends that he subjected to the alleged May 11 assault by Barnett.

The Plaintiff has attached additional grievance forms to his complaint. All of these grievances were filed after May 11, 2012. In a grievance dated May 17, 2012 and addressed to the Secretary of the Department of Corrections he alleged that he had filed a number of grievances complaining of Barnett's alleged sexual harassment. In this grievance he also referenced the alleged incidents that occurred on May 9 and May 11. In a grievance dated May 15, 2012 he complained of alleged racial slurs made by Barnett. The response of May 17, 2012 indicated that the allegations were being investigated. A second May 15, 2012 grievance alleged that Barnett, while passing the outside window of his cell, threatened to kill him. The response on May 17, 2012 indicated that his allegations were being investigated.

The Plaintiff filed a declaration from his cell mate at the time of the alleged sexual assault and search of his cell. In this

---

[2]Unlike the May 9 grievance form, this form was time stamped received on May 15, 2012.

[3]In a subsequent filing the Plaintiff alleged that he informed Perkins of the actions of Barnett through the prisoner grievance procedures.

statement the cell mate essentially corroborates the Plaintiff's allegations regarding those two incidents. He claims that he reported the May 9 incident but provides no details regarding how or to whom he reported the incident.


Defendant's Factual Assertions

The Defendants have filed an answer in which they denied the factual allegations in the complaint. The Defendants also filed a pretrial statement in which they contended that the Plaintiff did not file any grievance or complaints regarding the May 9 incident until after he was found guilty of threatening another officer with bodily harm. Defendant Barnett was the officer who filed the disciplinary report that resulted in the finding of a disciplinary violation. The Defendants also allege that immediately after the May 11 incident the Plaintiff he was taken to a shower and was promptly seen by medical personnel. They allege that the Plaintiff did not complain of and injuries and did not request either medical or psychological care.

The Defendants have provided their version of the facts through a motion for summary judgment and attached exhibits. The Defendants have submitted a number of affidavits in support of their motion for summary judgment. The Defendants have also submitted the results of an Inspector General investigation and medical records of the Plaintiff.

Defendant Barnett has submitted his own affidavit in which he describes his version of the relevant events. He explains that, on May 9, 2012 while returning the Plaintiff to his cell, he had difficulty removing the handcuffs. The Plaintiff did not complain or accuse him of an inappropriate touching. He expressly denies

7

grabbing the Plaintiff's buttocks or other inappropriate touching. Barnett also avers that on May 11, 2012 as he was conducting his rounds he observed that the Plaintiff had covered his window with toothpaste. He ordered the Plaintiff to clear his window and was met with a response indicating that the Plaintiff was going to cut himself. Barnett opened the food flap in the door but was unable to observe the Plaintiff because the Plaintiff have covered the flap with his mattress. As he attempted to move the mattress the Plaintiff grabbed and twisted his wrist while leaning against the mattress. According to Barnett he administered three one second bursts of chemical agent in order to free his hand. The Plaintiff continued to block the flap with the mattress, trapping Barnett's left hand. Barnett then applied a one second burst of chemical agents to free his hand. Immediately after the incident concluded the Plaintiff was taken to a shower to wash off the chemical agent and taken for a post use of force physical examination. Barnett avers that he had no knowledge of any prior grievances filed against him by the Plaintiff.

In an affidavit filed by Officer Rodolfo Gonzalez he avers that Barnett did not throw the Plaintiff's documents and photographs in the toilet. He states that on May 11, 2012 he conducted the search of the Plaintiff's cell. At the completion of the search the Plaintiff issued a verbal threat to Gonzalez. As a result Gonzalez gave the Plaintiff a Disciplinary Report for spoken threats. He further avers that he was asked by Lieutenant Gregory Hines if Barnett had thrown anything in the toilet. Apparently when Gonzalez looked in the Plaintiff's cell he observed items in the toilet and informed Lt. Hines that those items had not been in toilet earlier and accused the Plaintiff of throwing the items in the toilet. Later on the 11th, Gonzalez observed Barnett trying to free his arm from the flap in the Plaintiff's cell door.

8

Two affidavits from classification officers have been submitted. Officer Angela Williams avers that no grievances regarding the May 9 alleged sexual assault were filed until June 13, 2012. According to the facts alleged in her affidavit the first grievance mentioning allegations of sexual harassment occurred on May 11, 2012 and made no mention of the alleged May 9 incident. The Plaintiff made no verbal mention of any sexual harassment to Officer Williams on May 11 during her confinement rounds. Officer Williams states that the Plaintiff was found guilty of a disciplinary violation on May 17, 2012. None of the attached grievances filed prior to May 11, 2012 make any mention of the allegations of sexual harassment. Officer Scott Siegler avers that the Plaintiff filed a grievance on May 22, 2012 addressed to assistant warden Perkins and appealing a disciplinary hearing. Perkins responded to the grievance on May 31, 2012, denying the grievance.

The Defendants have also submitted affidavits from nurses who examined the Plaintiff in May 2012. Nurse Jeanette Jarrett performed a physical examination of the Plaintiff on May 17, 2012. The Plaintiff complained that he had been grabbed on both buttocks. The Plaintiff denied that he received any injuries and Jarrett did not note any injuries during the examination. Jarrett noted that the Plaintiff had to refer to notes while providing information about the alleged assault. Nurse Rickey Rowe performed a post use-of-force examination of the Plaintiff on May 11, 2012. The Plaintiff did not have any injuries and did not complain of or exhibit signs of respiratory distress. No medical treatment was indicated and the Plaintiff was advised to return to medical in the event he had any medical complaints. He did not return for treatment. Rowe also examined Defendant Barnett. He had abrasions on both of his wrists.

9

Dr. Rita Abislaiman has provided an affidavit in which she recounts her review of the Plaintiff's medical records. Dr. Abislaiman duties include providing psychiatric care to inmates at Everglades Correctional Institution. The Plaintiff's medical records indicate that he has a history of attempting to hurt himself or attempting suicide. The Plaintiffs psychiatric records reveal that, despite several visits with mental health specialists, he never sought mental health counseling for an alleged sexual assault or harassment. He made no complaints of any sexual assault or sexual harassment during any psychiatric exams.

In addition to the affidavits mentioned above, the Defendants have also provided an affidavit and documentation regarding the Florida Office of Inspector General's investigation of the two complaints made by the Plaintiff. The Inspector General investigated the Use of Force Complaint and the Improper Sexual Conduct Complaint. Included with the exhibits attached to the affidavit is a transcript of a sworn statement of the Plaintiff taken in the course of the investigation of his complaints. In that sworn statement the Plaintiff is consistent in his version of events with the exception of his admission that he had covered the window of his cell with toothpaste. (DE# 126-4, p. 73). As a result of the investigation, neither of the Plaintiff's claims were substantiated.

<u>Plaintiff's Response to Motion for Summary Judgment</u>

The Plaintiff has made numerous filings in opposition to the motion for summary judgment. Among the filings are affidavits and discovery responses of the Defendants. The affidavits provided by petitioner include those from other inmates.

Inmate Anthony Parker claims he was confined in the same area

10

as the Plaintiff and personally observed Defendant Barnett's interactions with the Plaintiff. He also claims that he filed grievances against Barnett with Defendant Perkins. Parker has not provided any corroborating evidence to support his claims of filing grievances. Parker also claims that he observed Defendant Barnett removing inmate grievances to prevent them from being collected and considered. He also claims to have observed the May 9 incident and saw Barnett grab the Plaintiff's buttocks. This affidavit references an event that occurred on May 14, 2012, however the affidavit was executed on May 13, 2012.

Inmate Emmanuel Velazquez, the Plaintiff's cell mate on May 9, 2012, recounts the events of that day. His version is consistent with the allegations of the Plaintiff. He claims that he saw Barnett reach through the door flap and grab the Plaintiff's buttocks. He also claims to have seen Barnett throw the Plaintiff's photos and mail in the toilet and remove the Plaintiff's blank grievance forms.

Inmate Vica Carlos claims that he observed the Plaintiff being put in a cell on May 11, 2012. The Plaintiff had "chemical burns" in his face, arms and hands. The Plaintiff told him that Barnett had gassed him for no reason. Carlos also mentions additional incidents. He claims that Barnett threatened to kill the Plaintiff and put dirt, rocks, glass and bleach in the Plaintiff's food. He claims that Barnett ate the food and afterward had blood in his mouth. He further claims that he told Defendant Perkins about what he had seen. The allegations regarding the contamination of the Plaintiff's food had not been previously raised by the Plaintiff.

In addition to the inmate affidavits, the Plaintiff has submitted a number of personal affidavits. These affidavits are

11

directed at rebutting the affidavits that were submitted by the Defendants. The content of these affidavits can be best characterized as repeated assertions that the affidavits provided by the Defendants are untrue. The Plaintiff has not provided any documentation to support his denials of the truth of the matters asserted in the affidavits submitted in support of the Defendants' motion for summary judgment.

<u>Defendant's Reply to Plaintiffs Response</u>

The Defendants have filed a reply in support of the motion for summary judgment. In the reply they contest some of the affidavits provided by the Plaintiff. They reassert that there is a complete absence of medical testimony or documentation to show the Plaintiff sustained any injury.

The Defendants assert, with supporting affidavit, that there was no inmate named Vica Carlos at Everglades Correctional Institution, but rather an inmate named Carlos Vila occupied cell 108 not cell 109. They further assert that even if Vica Carlos and Carlos Vila are the same person, he could not have observed what he claims from cell 108. The Defendants also point out that the affidavit was executed on May 13, 2012 but describes incidents which alleged occurred after that date.

The Defendants also contest the legitimacy of the affidavit of Anthony Parker. Again pointing out that it addresses issues and facts which were brought up in the motion for summary judgment which was filed more than a year after the petition was filed. The Defendants also contest, based on an affidavit, that Barnett could remove grievances because they were placed in a locked box and collected and date stamped with the date of receipt.

The Defendants also assert that the video of the Plaintiff taken after the May 11, incident shows no chemical burns on the Plaintiff's body. The Defendants further note that the Plaintiff acknowledged in his deposition that the nurse did not find any injury during his May 14, 2012 post use of force physical examination.

It is further noted by the Defendants that the Plaintiff admitted to covering his window with toothpaste and covering the door flap with his mattress.

<u>Plaintiff's Objection to Defendant's Reply</u>

In his objections to the Defendant's reply the Plaintiff contests the assertion that Vica Carlos does not exist and alleges that Carlos Vila and Vica Carlos are one in the same person. For the first time he claims that he translated the original affidavit of Vica Carlos from Spanish to English.

The Plaintiff further asserts that the failure to record his injuries was the fault of the Defendants and the Department of Corrections.

<u>Undisputed Facts</u>

There exist a number of completely uncontested facts. These facts encompass those allegations that are clearly established by the allegations of the Plaintiff and the evidence presented by each party.

The Plaintiff and Defendant Barnett were in close proximity on May 9, 2012 as Barnett was returning the Plaintiff to his cell after a medical call. Barnett removed the Plaintiff's handcuffs through the cell flap door. The Plaintiff complained that he had

been sexually assaulted on May 9, 2012 and was physically examined by a nurse on May 17, 2012 as a result of his report. The physical exam revealed no injuries. The Plaintiff has not requested any psychiatric counseling from any prison medical personnel based on this claimed sexual assault.

On May 11, 2012 the Plaintiff's cell mate was removed from the cell because his disciplinary confinement was complete. There was a search of the Plaintiff's cell. Later on the 11th, Barnett was passing the Plaintiff's cell and observed that the Plaintiff had covered his window with toothpaste. Barnett attempted to open the cell flap door but the Plaintiff placed his mattress against the flap to prevent Barnett from opening it. Barnett discharged a chemical agent into the cell. Immediately following the discharge of the chemical agent the Plaintiff was taken to a shower for decontamination. He was then taken for a physical exam. The physical exam revealed no injuries to the Plaintiff and he did not complain of any injuries. Barnett was also examined by a nurse. This physical examination revealed abrasions to each of Barnett's wrists. After the physical exam, the Plaintiff was provided clean clothes and placed in an uncontaminated cell.

The Plaintiff filed multiple grievances after the incidents that form the basis of his complaint. His grievances were referred for investigation to the Office of Inspector General and found to be unsubstantiated.

Material Facts Which are Not Genuinely Disputed

There are a number of material facts for which there can be no genuine dispute. As discussed here, material facts are those facts on which the Plaintiff bears the burden of proof in order to establish his claim of a constitutional violation warranting relief under section 1983.

There can be no genuine dispute that Defendant Perkins was not aware of the Plaintiff's allegations of misconduct by Barnett prior to the May 9 or May 11 incidents alleged by the Plaintiff. The Defendants have produced evidence that the Classification Officer responsible for reviewing grievances has checked the records and found no grievance reporting the alleged sexual harassment predating the alleged May 9 incident. The records show grievances for other complaints, but no mention of sexual harassment or other misconduct by Barnett. Furthermore, the Plaintiff himself has alleged that his grievances against Barnett were intercepted. There is also no genuine dispute that once the Plaintiff had submitted grievances against Barnett that the grievances were acted upon and were referred to the Inspector General Office for investigation.

There is no genuine dispute that the Plaintiff did not suffer any physical injury on May 9, 2012. The medical records and affidavits of medical providers reveal that the Plaintiff did not request a sick call as a result of the alleged May 9 incident. After he reported the alleged assault on May 15 he was examined by a nurse who found no evidence of injury and noted that the Plaintiff did not report any injury. Thus even assuming that Barnett touched the Plaintiff inappropriately, there was no physical injury.

There is no genuine dispute that the Plaintiff did not seek mental health counseling as a result of the alleged sexual assault. The Defendants submitted an affidavit from Dr. Abislaiman who is responsible for psychiatric care at Everglades Correction Institution. Dr. Abislaiman reviewed the Plaintiff's medical records and found that he had several consults on his mental health but never reported any problems as a result of the alleged sexual harassment or assault. The Plaintiff has responded to these facts

with an affidavit concluding that Dr. Abislaiman's affidavit is untrue. He has not presented any admissible evidence that he sought mental health counseling. He has merely attached excerpts from materials addressing the potential mental health effects of sexual assault. Based on the evidence presented there is no genuine dispute that the Plaintiff did not seek mental health counseling or report the alleged sexual assault to mental health counselor.

There is no genuine dispute that the Plaintiff has previously experienced suicidal thoughts and actions. The Defendants have submitted mental health records which reflect the Plaintiff's prior history of actual suicidal thoughts and actions. Additionally, the Plaintiff has admitted to prior attempts to manipulate the prison system by making claims of mental health issues. It is therefore undisputed that the Plaintiff has engaged in the same type of behavior that Defendant Barnett claims he encountered prior to the May 11, 2012 incident.

There is also no genuine dispute that the Plaintiff did not sustain any physical injuries as a result of the May 11, 2012 incident. The Plaintiff and Defendants agree that Barnett discharged his chemical spray into the Plaintiff's cell on May 11. The Plaintiff has not alleged that he sustained any physical injury as a result this incident. The medical records confirm that the Plaintiff did not sustain any physical injury. Although the Plaintiff has alleged that he suffered from breathing problems for weeks after the incident, he has failed to present any independent medical evidence to establish this claim. On the other hand, the Defendants have produced an affidavit and medical records showing that the Plaintiff did not seek medical attention for his claimed breathing problem. On this record there is no genuine dispute that the Plaintiff did not sustain any physical injury beyond the initial pain caused by the chemical spray.

There is no genuine dispute regarding the amount of force used during the May 11 incident. The Plaintiff has contended that Barnett subjected him to chemical agent for twenty minutes and used the entire can of chemical agent. However, Barnett in his affidavit states that he applied three one second bursts in order to free his hands. When this proved unsuccessful he applied a single one second burst and was able to free his hand. The Defendants have also submitted a report from the Inspector General which documents that the can of chemical agent weighed 126 grams when Barnett checked it out and was returned at a weight of 83 grams. There is thus no genuine dispute that Barnett did not discharge an entire can of chemical agent. Further, both parties agree that immediately following the incident the Plaintiff was decontaminated and underwent a post use of force physical exam.

Although, as discussed below, there is a dispute regarding the instigation for the use of force on May 11, 2012, there is no dispute regarding some of the actions of the Plaintiff leading up to the use of force. It is not genuinely disputed that the Plaintiff covered the window to his cell with toothpaste. The Plaintiff, in his sworn statement to the inspector general admitted that he covered the window. The covered window obscured Barnett's view into the Plaintiff's cell. The Plaintiff has also admitted that he pushed his mattress against the door flap. Thus there is no genuine dispute that the Plaintiff obscured Barnett's view into his cell and then blocked further view by holding his mattress against the door flap.

<u>Disputed Facts</u>

There is a dispute regarding the nature of the touching that occurred on May 9, 2012. The Plaintiff has alleged that while removing his handcuffs Barnett grabbed his buttocks in a sexual manner. The Plaintiff's allegation is that Barnett grabbed his

17

buttocks, on the outside of his clothing, and held his hand there for a few seconds. Barnett on the other hand avers that while removing the Plaintiff's handcuffs he had trouble with one hand and it took longer than normal to remove the cuffs from the second wrist. It is undisputed that the handcuffs sometimes are difficult to remove.

There is also a dispute regarding the instigation for the use of force on May 11, 2012. The Plaintiff has alleged that the use of force was without cause and that Barnett discharged the chemical agent with  cruel and malicious intent lacking any legitimate purpose. He has alleged that Barnett was sexually harassing him and applied the chemical spray after threatening that if Barnett did not bend over and show his bare buttocks he would spray him. On the other hand, Barnett avers that he applied the chemical spray in defense of himself after the Plaintiff made a verbal threat to harm himself and refused to obey verbal orders to clear the view into his cell. Barnett avers that he approached the Plaintiff's cell during normal security rounds and noticed that the Plaintiff had smeared toothpaste over his window. He ordered the Plaintiff to clean the window, but the Plaintiff then announced that he was going to cut himself. When Barnett attempted to look in the door flap, the Plaintiff had covered it with his mattress.

Analysis of Claims Under Summary Judgment Standard
Deliberate Indifference Claim
    The first claim to be addressed is the Plaintiff's contention that Defendant Perkins was deliberately indifferent to the risk allegedly posed by Defendant Barnett. The Plaintiff's claim is that Perkins was aware of the alleged sexual harassment because he had filed grievances complaining of the harassment and threats. He argues that due to Perkins deliberate indifference he was subjected an alleged sexual assault on May 9, 2012 and an alleged excessive

use of force on May 11, 2012.

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013)(quoting Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir.2003). To proceed beyond summary judgment the petitioner must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Goodman at 1331. (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir.2003). To prove that a prison official was deliberately indifferent to a substantial risk of serious harm the petitioner must establish not only the risk but also that the official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman at 1331-1332 (quoting Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir.2010). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Goodman at 1332 (quoting Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1319-20 (11th Cir.2005).

On this claim there can be no genuine dispute that Defendant Perkins was not aware of the alleged risk of serious harm. The Plaintiff's first grievance was not received by Perkins until after the two alleged incidents. The Plaintiff's own allegations, that Barnett intercepted prior grievances, establish that Perkins was not made aware of the alleged prior sexual harassment and threats. The plaintiff bears the burden of establishing that Perkins had knowledge of the alleged excessive risk and disregarded that risk.

As there is no genuine dispute that Perkins was not aware of the risk of harm, the Plaintiff cannot establish the first element of his claim of deliberate indifference. Therefore Defendant Perkins is entitled to summary judgment on this claim.

Claim of Excessive Force

The Plaintiff claims that Defendant Barnett used excessive force during the May 11, 2012 encounter. He denies that he told Barnett that he was going to cut himself but alleges that Barnett discharged the chemical spray merely to cause him harm. The Plaintiff has alleged that Barnett emptied an entire can of chemical spray and that this incident lasted for twenty minutes. The Plaintiff has acknowledged that prior to discharging the chemical spray, Defendant Barnett advised his supervisor that he was going to discharge the chemical spray because of the Plaintiff's threats to cut himself. The Plaintiff does not contest that he was immediately decontaminated and examined by a nurse for injuries.

"Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (referencing Whitley v. Albers, 475 U.S. 312 (1986))."[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, supra, 475 U.S. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.)).

Whether the prison disturbance is a riot or a lesser disruption, the corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates; but the Courts have acknowledged that "both situations may require prison officials to act quickly and decisively...[and] should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Hudson v. McMillian, supra, (quoting Whitley, supra, at 321-22); Brown v. Smith, 813 F.2d 1187 (11 Cir. 1987).

The test to determine whether a claim of excessive force rises to a constitutional level of cruel and unusual punishment involves both subjective and objective components. The subjective component relates to whether a defendant possessed a wanton state of mind while applying force, and requires the claimant to show that the prison officers' actions were malicious and sadistic, and for the purpose of causing harm, or unnecessary and wanton pain and suffering upon the prisoner. Hudson v. McMillian, supra, 503 U.S. at 6-7; Rhodes v. Chapman, 452 U.S. 337 (1981); Gregg v. Georgia, 428 U.S. 153 (1976); Stanley v. Hejirika, 134 F.3d 629, 634 (4 Cir. 1998); Branham v. Meachum, 77 F.3d 626, 630 (2 Cir. 1996); Bennett v. Parker, supra, 898 F.2d at 1532-33.

Thus, under the Eighth Amendment, force may be employed in a custodial setting as long as it is not done "maliciously and sadistically to cause harm," but applied in a good faith effort to maintain or restore discipline. Brown v. Smith, 813 F.2d 1187, 1188 (11 Cir. 1987); Skritch v. Thornton, 280 F.3d 1295, 1300 (11 Cir. 2002), citing Whitley v. Albers, 475 U.S. 312 (1986) (quotations omitted). The factors relevant to the determination of whether the force was used maliciously and sadistically with the purpose of causing harm include: 1) the extent  of the injury

21

inflicted; 2) the need for force; 3) the relationship between the need for force and the amount of force used; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell v. Sikes, 169 F.3d 1353, 1375 (11 Cir. 1999); Redd v. Conway, 160 Fed.Appx. 858, 860 (11 Cir. 2005), citing Carr v. Tatangelo, 338 F.3d 1259, 1271 (11 Cir. 2003); Bennett v. Parker, 898 F.2d 1530, 1532-33 (11 Cir. 1990); Stanley v. Hejirika, supra, 134 F.3d at 634; Branham v. Meachum, supra, 77 F.3d at 630; Lunsford v. Bennet, 17 F.3d 1574, 1581 (7 Cir. 1994).

In short, for an inmate to prevail on a claim of excessive force he must satisfy not only the subjective component that the corrections officials acted with a sufficiently culpable state of mind, but also the objective component that he suffered some injury which was sufficiently serious in relation to the need for the application of force to establish constitutionally excessive force.

It is well settled that the "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986). Although an unjustified, brutal beating of an inmate by a guard is sufficient to state a claim under §1983, Haines v. Kerner, 404 U.S. 519 (1983); Perry v. Thompson, 786 F.2d 1093 (11 Cir. 1986); Aulds v. Foster, 484 F.2d 945 (5 Cir. 1973), not every push and shove, striking, or other use of force against a prisoner, even if it may later seem unnecessary in the peace of a judge's chambers, gives rise to an action in federal court for a deprivation of civil rights. Hudson v. McMillian, 503 U.S. 1, 9 (1992); Graham v. Connor, 490 U.S. 386 (1989); Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.), cert. denied, 414 U.S. 1033 (1973); Bennett v. Parker, 898 F.2d 1530, 1533 (11 Cir. 1990); Spicer v. Collins, 9 F.Supp. 2d

673, 686 (E.D.Tex. 1998).

On April 26, 1996, the Prison Litigation Reform Act [PLRA] was enacted. The PLRA significantly altered a prisoner's right to bring civil actions *in forma pauperis*, and in pertinent part placed new restrictions on a prisoner's ability to seek federal redress concerning the conditions of his confinement.

Section 1997e(e) of the PLRA provides as follows.

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

With the enactment of the Prison Litigation Reform Act [PLRA] the requirements relating to injury for various kinds of inmate civil rights claims, including claims relating to use of force against inmates by corrections officials, have changed.

The Eleventh Circuit has interpreted this provision of the PLRA to mean that if due to the defendant's actions, a prisoner has not suffered some physical injury which is sufficient to satisfy the statutory provision in question, and the prisoner therefore cannot show anything more than mental or emotional suffering, the prisoner is foreclosed from obtaining compensatory or punitive damages even if there has been some violation of his constitutional rights.[4] The Eleventh Circuit, however, did not hold that a viable claim for nominal damages would necessarily be foreclosed under

---

[4]      When a prisoner files a complaint without a showing of more than *de minimis* physical injury, Section 1997e(e) operates to bar recovery of compensatory and punitive damages for mental and emotional injury suffered while the plaintiff was incarcerated; and in the Eleventh Circuit the §1997e(e) bar precluding recovery <u>compensatory</u> and <u>punitive</u> damages has been held to apply to constitutional claims other than those involving physical injury. <u>Harris v. Garner</u>, 190 F.3d 1279, 1286-87 (11 Cir. 1999), <u>vacated in part and reinstated in part</u>, <u>Harris v. Garner</u>, 216 F.3d 970, 984-85 (11 Cir. 2000) (en banc). The Court in <u>Harris</u>, while holding that §1997e(e) is a limitation on the damages which are recoverable, found that it does not preclude a prisoner's right to seek declaratory and injunctive relief. <u>Harris</u>, <u>supra</u>, 190 F.3d at 1287-88.

§1997e(e), even if entitlement to other damages were barred under the statute.[5]

In the absence of any definition of "physical injury" in the PLRA, it has been left to the Courts to interpret the nature of the injury required. See Watts v. Gaston, No. 97-0114-CB-M, 1999 U.S. Dist. LEXIS 6593 (S.D.ALA. April 1, 1999).

In conducting inquiries relating to Eighth Amendment use of force claims the Courts have interpreted the language of §1997e(e) to require actual physical injury that is something more than de minimis injury in order to sustain a claim for relief.[6]  Gomez v. Chandler, 163 F.2d 921, 924 (5 Cir. 1999) ("to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury"); Spicer v. Collins, 9 F.Supp. 2d 673, 686-87 (E.D.Tex. 1998) (in

---

[5]     The Court in Harris, expressed no view on whether §1997e(e) would bar nominal damages which normally are available for the violation of certain "absolute" constitutional rights, without a showing of actual injury, Harris, 190 F.3d at 1288 n.9 (citing Carey v. Piphus, 435 U.S. 247, 266 (1978)), and thus Harris does not stand for the proposition that all actions for redress of alleged abridgement of constitutional rights are barred if there is no physical injury. The Court left open the question whether, upon a prisoner's showing that he or she had suffered the violation of some absolute constitutional right, the prisoner/plaintiff might be entitled to nominal damages (in addition to declaratory and/or injunctive relief) for redress of the constitutional tort even in the absence of physical injury. Several other circuits have reached the question regarding availability of nominal damages, and have held that [apart from any unavailability of punitive and/or compensatory damages resulting from the statutory language of §1997e(e)] prisoner plaintiffs may sue on constitutional claims and if they prevail may at least recover nominal damages. See Thompson v. Carter, 284 F.3d 411, 418 (2 Cir. 2002) (declaratory and injunctive relief, and nominal damages not barred); Searles v. Van Bebber, 251 F.3d 869, 878-80 (10 Cir. 2001) (compensatory damages barred, but nominal damages and punitive damages are not); Allah v. Al-Hafeez, 226 F.2d 247, 251-52 (3 Cir. 2000) (compensatory damages are barred, but nominal and punitive damages are recoverable); Rowe v. Shake, 196 F.3d 778, 781-82 (7 Cir. 1999) (declaratory and injunctive relief, and nominal damages not barred).

[6]     Prior to the PLRA the absence of injuries, or evidence of only minor injuries were held by the Courts to be suggestive of de minimis uses of force not rising to the level of cruel and unusual punishment. See: Norman v. Taylor, 25 F.3d 1259, 1262-64 (4 Cir. 1994)(swinging keys at inmate's face which struck his thumb did not amount to cruel and unusual punishment); White v. Holmes, 21 F.3d 277, 280-81 (8 Cir. 1994)(keys swung at inmate which slashed his ear did not rise to Eighth Amendment violation); DeArmas v. Jaycox, No. 92 Civ. 6139(LMM), 1993 WL 37501, *4 (S.D.N.Y.  Feb. 8, 1993)(punching inmate in arm and kicking him in leg constituted de minimus force), aff'd, 14 F.3d 591 (2 Cir. 1993); Gabai v. Jacoby, 800 F.Supp. 1149, 1154-55 (S.D.N.Y. 1992) (shoving chair at inmate causing bruise not actionable); Neil v. Miller, 778 F.Supp. 378, 384 (W.D. Mich 1991) (backhand blow to groin not actionable).

24

case where the plaintiff failed to allege any physical injury when
defendant officer grabbed him by arm, and alleged pain in neck,
arms, and hands from handcuffing, the Court held that "In addition
to establishing that force was applied maliciously and sadistically
to cause harm, a plaintiff must show that he suffered some injury
in order to prevail on an Eighth Amendment excessive force claim,"
and ruled that the force used was not the sort of force "repugnant
to the conscience of mankind"); Siglar v. Hightower, 112 F.3d 191,
193 (5 Cir. 1997) (inmate's alleged injury at hand of prison guards
was de minimis, and thus he did not raise a valid Eighth Amendment
claim for excessive use of force, nor did he show a prerequisite
"physical injury" under the PLRA to support a claim for emotional
or mental suffering). See: Luong v. Hatt, 979 F.Supp. 481, 485-6
(N.D. Texas 1997) (in case involving use of force against inmate by
other inmates, the District Court interpreted §1997e(e) to require
a specific physical injury, i.e., an injury which is an "observable
or diagnosable medical condition requiring treatment by a medical
care professional," in order to assert a claim for which relief
could be granted for a claim of this kind).[7]

    Gomez, Spicer, Siglar, and Luong notwithstanding, it is noted
that, post-PLRA, in 2002, the Supreme Court, in Hudson v.
McMillian, supra, held that the use of excessive physical force
against a prisoner may constitute cruel and unusual punishment even
though the inmate does not suffer serious injury. Hudson, 503 U.S.
at 5-12. It is further noted that this Circuit has held, in the
Eighth Amendment context, both before and after enactment of the
PLRA, that use of unnecessary or gratuitous force against a
prisoner is cognizable in a prisoner civil rights suit for damages.
See Bruce v. Wade, 537 F.2d 850, 853 (5 Cir. 1976) (a violation of
§1983 is clearly stated by the unjustified beating of an inmate at

---

[7]     The Court in Luong defined "de minimis" injuries to include
injuries such as "scrapes, scratches, cuts, abrasions, bruises, pulled
muscles, back aches, leg aches, etc., which are suffered by free world people
in just every day living for which they never seek medical professional care,"
which may last "even up to two or three weeks," and which can be treated by
"home remedy care," with "over-the-counter drugs, heating pads, rest, etc.,
and the Court held that such injuries are excluded from constitutional
recognition under §1997e(e). Luong, supra, 979 F.Supp. at 485-6.

the hands of prison officials); Skrtich v. Thornton, 280 F.3d 1295, 1303 (11 Cir. 2002)(stating: "By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued.")(citing cases).

The parties have presented disputed versions of the May 11, 2012 incident. The Plaintiff alleges that Defendant Barnett applied the chemical agent as a part of his alleged ongoing sexual harassment. He has alleged that Barnett applied an entire can of chemical agent over twenty minutes. Barnett, on the other hand, has alleged that he applied the chemical agent in response to Plaintiff's refusal to clear his window and threats to harm himself. Barnett has averred that he discharged three one second sprays in order to extricate himself from the Plaintiff's grasp and when this proved unsuccessful he applied a final one second spray which resulted in his release.

Although there is a dispute regarding the reason for the use of force, the Plaintiff's version of events is not plausible given the other undisputed facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, (2007). Here the Plaintiff's version of events, that Barnett emptied an entire can of chemical agent over the course of twenty minutes which resulted in chemical burns on his body, is not plausible. Barnett has presented the results of the IG's report that establishes that he did not discharge an entire can of chemical agent but rather he discharged approximately one third of the can. There is no evidence that the Barnett continuously sprayed the Plaintiff for twenty minutes. Furthermore, the evidence establishes that immediately following the application of chemical spray the Plaintiff was decontaminated and a physical exam revealed no chemical burns or other injuries. Thus, although at summary judgment the Plaintiff is entitled to view of the facts in the light most favorable to him, here, his version of the facts is so implausible that the undersigned cannot adopt that version.

The Plaintiff's version of the facts is further rendered implausible by his repeated denials that he has ever threatened to harm himself. These denials are refuted by the Plaintiff's own admissions in his deposition that he has attempted to manipulate the prison system through false mental health complaints.

Reviewing the evidence in the light most favorable to the Plaintiff, yet tempered by the plausibility of his version of events, leads to a conclusion that Defendant Barnett did not engage in the wanton and malicious use of force merely to inflict pain upon the Plaintiff. This conclusion is based on an examination of the relevant factors including the extent of injury, the need for force, the relationship between the use of force and the amount of force used, efforts to temper the severity of the response, and the threat as reasonably perceived by Barnett.

The Plaintiff did not sustain any severe injury. The Plaintiff's only injury was the pain associated with the application of the chemical agent. According to the medical records the Plaintiff suffered no lasting physical effects and sought no medical attention following the initial physical exam. Although the Plaintiff has alleged he suffered breathing problems for weeks after the use of force, he has failed to present any plausible evidence of such problems to support his bare self serving allegations. Thus, the Plaintiff has failed to establish that he suffered anything more than a *de minimus* injury.

Barnett utilized minimal force in order to obtain the Plaintiff's compliance with orders to make himself visible. Barnett's use of this force was made in response to his reasonable belief that the Plaintiff might harm himself. Barnett was confronted during his rounds with a prisoner who had obscured the view into his cell. When Barnett attempted to view inside the cell through the door flap, the Plaintiff continued to block the view with his mattress. In response Barnett used a limited amount of force in order to obtain a view into the cell and determine the status of the Plaintiff while extricating his hand from the door flap. This plausible version of events indicates that Barnett used

a minimal amount of force in order to obtain the Plaintiff's compliance with his legitimate commands. Courts have held that even simple inmate recalcitrance, in the form of refusal of verbal orders, may in appropriate circumstances justify the use of force (e.g., the application of mace, in non-dangerous amounts), to obtain inmate compliance so as to maintain institutional order, even when the inmate is in handcuffs, or locked in his cell when the chemical agent is used. See e.g. Williams v. Benjamin, 77 F.3d 756, 762-63 (4 Cir. 1996); Soto v. Dickey, 744 F.2d 1260, 1270-71 (7 Cir. 1984); Spain v. Procunier, 600 F.2d 189, 195 (9 Cir. 1979); Williams v. Scott, No. 96-2184, 1997 WL 312273, at *1 (7 Cir., June 5, 1997); Barr v. Williamsburg Co. Sheriff's Dept., No. C/A2:02-0167-22AJ, 2002 WL 32333152, at *4-5 (D.S.C., Dec. 27, 2002); but see Vinyard v. Wilson, 311 F.3d 1340, 1348-49, n.13 (11 Cir. 2002). Thus, the facts establish that Barnett utilized a minimum amount of force in order to ensure the Plaintiff's compliance with his legitimate security concerns.

Of particular importance in reaching the determination that Defendant Barnett is entitled to summary judgment on this claim is that he announced his intentions to his supervisor and then took immediate actions to alleviate any pain caused by the application of the chemical agent. This fact goes to both the subjective and objective elements of the excessive use of force claim. If, as the Plaintiff claims, Barnett was merely using the chemical agent to maliciously inflict unwarranted pain, then it defies logic that Barnett would both advise his superior of his intent to spray the Plaintiff and then get the Plaintiff immediate relief. These are not the actions of an individual seeking to inflict unwarranted pain, but rather are corroborative of Barnett's claim that this was merely a spontaneous use of minimal force to obtain the Plaintiff's compliance with his demands to allow access to his cell. These facts do not indicate a subjective intent to inflict unwarranted pain and also show objectively that Barnett took immediate action to temper the severity of his even minimal use of force.

Therefore, taking into consideration all of the factors necessary for an evaluation of an excessive use of force claim,

28

Barnett is entitled to summary judgment. The Plaintiff did not suffer a serious injury, the amount of force used was the minimal amount necessary to ensure the Plaintiff's compliance and such force was used in response to Barnett's reasonable belief that the Plaintiff posed a threat to both himself and Barnett.

<u>Claims of Sexual Assault or Harassment</u>

The Plaintiff alleges that Defendant Barnett sexually assaulted him on May 9, 2012. He further alleges that prior to the alleged sexual assault Barnett engaged in repeated sexual harassment by calling him various epithets and accusing him of engaging in homosexual activities with his cell mate. The alleged sexual assault occurred when Barnett allegedly placed his hand on the Plaintiff's buttocks outside his clothing and held it there for a few seconds.

It has been recognized by the 11th Circuit that "severe or repetitive sexual abuse of a prisoner by prison official can violate the Eighth Amendment." <u>Boxer v. Harris</u>, 437 F.3d 1107, 1111 (11th Cir. 2006). Such abuse has "'no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'" <u>Id.</u> (quoting <u>Boddie v. Schneider</u>, 105 F.3d 857, 861 (2d Cir. 1997). The test for whether sexual abuse has risen to the level of a constitutional violation has both subjective and objective component. <u>Boxer</u> at 111. The injury must be "objectively, sufficiently serious," and the official must subjectively have a "sufficiently culpable state of mind." <u>Id.</u> In <u>Boxer</u> the court held that an inmate who had been forced to strip and masturbate before a female officer by threat of reprisals suffered on a de minimus injury, which did not violate the Eight Amendment. <u>Id.</u>

In <u>Boddie</u> a male prisoner complained of several verbal and physical encounters with a female corrections officer. The prisoner complained that the female officer made suggestive comments which he interpreted as a "pass". <u>Boddie</u> at 859. He also alleged that on different occasions the female officer: (1) squeezed his hand and touched his penis while making a sexual remark; (2) pinned him

against a wall while pressing her breasts against him; and (3) pressed her vagina against his penis. Id. at 860. The court found that the small number of incidents alleged, although despicable, did not rise to the level of an Eighth Amendment violation. Id. at 862.

In the instant case the Plaintiff has alleged a few incidents of verbal harassment and one instance of a brief physical touching. Although the plaintiff alleges that this verbal harassment had been ongoing, he has failed to provide any evidence that he filed grievances regarding this behavior. The alleged physical touching involved the Defendant placing his hand on the Plaintiff's buttocks for a few seconds while his handcuffs were being removed. Although these allegations, if true, are, as the court described in Boddie, despicable, however as in Boddie they do not rise to the level of constitutional violation. The Plaintiff suffered no physical injury and reported no psychological harm despite numerous encounters with mental health professionals. The Defendant Barnett is entitled to summary judgment because the facts as alleged simply do not warrant relief for a constitutional violation. In finding that there is no basis for relief under section 1983, the undersigned is in no way condoning the alleged behavior.

Law Pertaining to Claims of Retaliation

Although not clearly presented in initial complaint, the Plaintiff claims that Defendant Barnett retaliated against him for exercising his First Amendment rights by filing grievances. In his deposition he clarified the form of retaliation, stating Defendant Barnett came into his cell and threw his photos and mail in the toilet in retaliation for Plaintiff's filing of grievances. The events described by the Plaintiff correspond with the allegations of what occurred on May 11, 2012.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). The Eleventh Circuit has held that "First Amendment rights to free speech and to

petition the government for a redress of grievances are violated
when a prisoner is punished for filing a grievance concerning the
conditions of his imprisonment." Boxer X v. Harris, 437 F.3d 1107,
1112 (11th Cir.2006). "To state a retaliation claim, the commonly
accepted formulation requires that a plaintiff must establish
first, that his speech or act was constitutionally protected;
second, that the defendant's retaliatory conduct adversely affected
the protected speech; and third, that there is a causal connection
between the retaliatory actions and the adverse effect on speech."
Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir.2005).

      The undisputed facts support the granting of summary judgment
to the Defendant Barnett on this claim. Barnett has presented
evidence that the Plaintiff did not file any grievances against him
prior to the May 11, 2012 search of the Plaintiff's cell. The
Plaintiff in his response to this evidence merely makes self
serving allegations that Defendant Barnett stole the grievances
before they could be collected. However, this allegation by the
Plaintiff is rebutted by the affidavit of the individual collecting
the grievances indicating that the grievances are placed in a
locked box. The undisputed facts establish that the Plaintiff did
not file any grievances against Defendant Barnett until after May
11, 2012. Thus the May 11, 2012 incident could not have been in
retaliation for the Plaintiff's exercise of his First Amendment
rights.

      Even assuming that the Plaintiff had filed prior grievances
and that Barnett threw his photos and mail in the toilet on May 11,
2012, the Plaintiff's actions after that date show that he was not
adversely affected because he continued to file grievances against
Barnett. Not only did he continue to file such grievances, but the
Department of Corrections referred such grievances to the Inspector
General for investigation. Since his First Amendment right to seek
redress of grievances was not adversely affected he necessarily
cannot establish any causal relationship between the alleged
retaliation of Barnett and a curtailment of his right to pursue
grievances. Thus even in the light most favorable to the Plaintiff
the Defendant's motion for summary judgment on this claim must be

granted.

### III. Conclusion

In as much as there is no genuine issue of material fact, and the Plaintiff's version of events concerning the use of force incident are implausible, Summary Judgment is appropriate in this case on each claim and for each Defendant.

It is therefore recommended that:

(1)   Defendant Perkins is entitled to a grant of summary judgment in his favor on the claim of deliberate indifference.

(2)   Defendant Barnett is entitled to a grant of summary judgment in his favor on the claims of excessive force, sexual harassment and retaliation.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: February 5th,2014.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Steven Kirkland, Pro Se
      DC No. 1503921
      Santa Rosa Correctional Institution
      5850 East Milton Rd.
      Milton, Florida 32583-7914

      Monica Galindo Stinson, AAG
      Office of the Attorney General
      110 S.E. 6th Street, 10th Floor
      Fort Lauderdale, FL 33301