## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 12-22302-CIV-ALTONAGA/White

**STEVEN KIRKLAND**,

     Plaintiff,

vs.

**EVERGLADES CORRECTIONAL INSTITUTION**, *et al.*,

     Defendants.

_____/

### **ORDER**

On June 20, 2012, Plaintiff, Steven Kirkland ("Kirkland"), filed a *pro se* Complaint under the Civil Rights Act, 42 U.S.C. section 1983 ("Complaint") [ECF No. 1],[1] which the Court referred to Magistrate Judge Patrick A. White pursuant to Administrative Order 2003-19 for a report and recommendation on dispositive matters.  (*See* [ECF No. 3]).  On June 24, 2013, Defendants, Sergeant Christopher Barnett ("Barnett") and Assistant Warden Alonzo Perkins ("Perkins"), filed a Motion for Summary Judgment ("Motion") [ECF No. 122].  On July 22, 2013, Kirkland's Response [ECF No. 134] was entered on the docket, and Defendants replied on August 6, 2013 [ECF No. 147].  Magistrate Judge White's Report of Magistrate Judge ("Report") [ECF No. 182], entered on February 5, 2014, recommends granting Defendants' Motion.

On February 24, 2014, Kirkland filed Plaintiff's Objection to the Magistrate Report ("Objections") [ECF No. 183].  Defendants have not responded to the Objections.  In reviewing

---

[1] Because the pages contained in the Complaint, as well as in other filings submitted by Plaintiff, are not numbered, the Court refers to the page numbers provided by the Court's electronic case management ("CM/ECF") system.

the disposition *de novo*, the undersigned has reviewed the Report, the parties' written submissions, the record, and applicable law.   *See* FED. R. CIV. P. 72(b)(3) (stating when a magistrate judge's "disposition" has properly been objected to, district courts must review the disposition *de novo*).

## I.   BACKGROUND[2]

Kirkland is confined at the Santa Rosa Correctional Institution.  (*See* Report 1).  In 2012, at the time of the events alleged in the section 1983 Complaint, he was a prisoner at the Everglades Correctional Institution.  (*See id.*).  Kirkland's claims against Barnett include sexual assault and harassment; threatening physical violence; and excessive, malicious use of force in violation of the Eighth Amendment; as well as a claim of First Amendment retaliation based on Plaintiff filing prison grievances against Barnett.  (*See* Compl. ¶¶ 33, 35).  Kirkland's claim against Defendant Perkins alleges Perkins was deliberately indifferent to Plaintiff's grievances regarding interactions with Barnett, which led to Plaintiff's exposure to an allegedly "unreasonable risk of serious harm" in violation of the Eighth Amendment.  (*Id.* ¶ 34).

After considering certain factual assertions to be implausible, including Kirkland's version of events concerning the excessive use of force, the Magistrate Judge concludes there is no genuine dispute of material fact as to any of Plaintiff's claims.  (*See* Report 32).  The Report recommends granting summary judgment in favor of Barnett on the claims of sexual harassment, excessive force, and retaliation, and in favor of Perkins on the deliberate indifference claim.  (*See id.*).  In the Objections, Kirkland principally restates the allegations of his Complaint, reasserting them in a conclusory fashion with sworn statements.  (*See generally* Objections).  He also raises arguments regarding whether certain material facts are genuinely disputed.  (*See id.*).

---

[2]  A detailed summary of the material facts is contained in the Report and is not repeated here.  (*See* Report 5–14).

Kirkland asserts Barnett sexually assaulted him on May 9, 2012.  (*See* Compl. ¶¶ 11–12).

While removing Kirkland's handcuffs, Barnett grabbed Plaintiff's buttocks.  (*See id.*; May 9,

2012 Inmate Request, Ex. A 4 [ECF No. 1]).   Kirkland claims he filed an informal grievance

reporting the incident the same day, but he has not provided any proof the grievance was actually

submitted as the form was not time-stamped received.  (*See* May 9, 2012 Inmate Request, Ex. A

4).   Kirkland contends there is no evidence this form was submitted because Barnett deliberately

removed grievances filed against him from the prison's grievance box.   According to Kirkland,

Barnett conducted a search of his cell on May 11, 2012 (*see* Compl. ¶ 14), wherein he allegedly

destroyed Plaintiff's property by throwing Plaintiff's personal effects in the toilet and removing

any inmate grievance forms in retaliation for the May 9, 2012 grievance (*see id.* ¶¶ 15–17; *see

also* Anthony Aff., Ex. B ¶¶ 14, 28 [ECF No. 139]; Velazquez Aff., Ex. C ¶ 8 [ECF No. 139]).

Later on May 11, 2012, Barnett sexually harassed Kirkland by ordering he bend over to

expose his bare buttocks, and threatening to discharge chemical spray for Kirkland's failure to

comply.  (*See* Compl. ¶¶ 19–20).    According to Kirkland, Barnett then opened the food slot in

the cell door and sprayed him with chemical spray.  (*See id.*).   Kirkland filed a grievance dated

May 11, 2012, stamped received on May 15, 2012, regarding these events.  (*See* May 11, 2012

Inmate Request, Ex. B 6 [ECF No. 1]).    Afterward, Kirkland filed additional grievances,

including: (1) a grievance dated May 14, 2012 and received on May 15, 2012 accusing Barnett of

calling Plaintiff racial slurs and threatening to spray him (*see* May 14, 2012 Inmate Grievance,

Ex. D 11 [ECF No. 1]); (2) a grievance dated and received on May 15, 2012 accusing Barnett of

threatening to kill Kirkland on one occasion when passing the outside window of Plaintiff's cell

(*see* May 15, 2012 Inmate Request, Ex. E 13 [ECF No. 1]); and (3) a grievance dated May 17,

2012 addressed to the Secretary of the Department of Corrections regarding the May 9 and 11

incidents (*see* May 17, 2012 Inmate Grievance, Ex. C 10 [ECF No. 1]). These grievances were received and responses were issued on May 17, 2012, indicating Kirkland's allegations were being investigated. (*See generally* OIG Report of Investigation [ECF No. 126-4]).

## II.    LEGAL STANDARD

Summary judgment is rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 254 (1986) ("[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find" for the nonmoving party.).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted); *but see Leigh v. Warner*

4

*Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (noting conclusory allegations based on subjective beliefs lack probative value and are insufficient to establish genuine issues of material fact). Even if the parties agree on the basic facts, summary judgment may be inappropriate where they disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969) (citations omitted). But a case need not go to trial "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. Sch. Bd. of Miami-Dade Cnty*, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotation marks and citations omitted); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling in a motion for summary judgment.").

Where "the only issue is one of credibility[,]" courts are required to accept as true direct evidence that creates a material dispute of fact and cannot grant summary judgment. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *see also Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs*, 415 F. App'x 153, 155 (11th Cir. 2011) (explaining a genuine factual dispute exists in the "classic case of the plaintiff swearing to one set of facts and the defendants swearing to another set of facts"). Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) (alterations added); *see also Anderson*, 477 U.S. at 255 (stating credibility determinations, weighing of the evidence, and drawing justifiable inferences from the facts are functions for the jury).

Case No. 12-22302-CIV-ALTONAGA/White

### III.    LEGAL ANALYSIS

As a preliminary matter, Kirkland generally does not contest the Report's characterization or application of the relevant case law.[3]  (*See generally* Objections).  Rather, Kirkland raises twenty-four objections regarding the Report's determinations that certain material facts are undisputed.  (*See id.* 2–7).  To refute Defendants' evidence and demonstrate material facts are genuinely disputed, Kirkland cites to multiple sworn affidavits, including affidavits from inmates Parker Anthony ("Anthony"), Emmanuel Velazquez[4] ("Velazquez"), and Vica Carlos ("Carlos"), as well as numerous personal affidavits containing self-serving statements.[5]  (*See id.*).

Kirkland's affidavits are directed at rebutting the sworn statements submitted by Defendants.  While Plaintiff's affidavits generally state the facts in Defendants' affidavits are untrue, they often do so without providing supporting evidence.   In arguing certain facts in Defendants' affidavits and evidence are not true, Kirkland essentially attacks the credibility of Defendants' witnesses and evidence.

As discussed, "[i]t is the responsibility of the ultimate finder of fact to weigh the evidence and make the appropriate credibility determinations[,]" *Harris v. Shelby Cnty. Bd. of Educ.*, 99 F.3d 1078, 1084 (11th Cir. 1996) (alterations added), particularly where the plaintiff and defendant each swear to a divergent set of facts.[6]   *See Skelly*, 415 F. App'x at 155 (explaining

---

[3] At the end of the Objections, Kirkland raises several arguments regarding the legal standard required to state a claim for sexual assault and harassment. (*See* Objections 8). As to his claims of excessive use of force and retaliation, Kirkland reasserts the same conclusory allegations contained in the Complaint and supporting sworn statements.  (*See id.* 9).

[4] Velazquez was originally a named plaintiff in this case.

[5] Defendants challenge the veracity of these affidavits, noting various inconsistencies with the dates and inmates' names.  (*See* Reply 3–5).

[6] Moreover, "[m]aterial factual disputes cannot be resolved at summary judgment based on conflicting

that because the testimony of plaintiff — who did nothing to provoke the altercation and lost consciousness until she awoke in the hospital — directly contradicted the defendant officers' version of events, "it is up to the jury to determine whom to believe and what actually transpired" (citation omitted)).  The court in *Skelly* noted the plaintiff's testimony "may not be particularly believable in light of all other summary judgment evidence," including circumstantial evidence she suffered from a mental disturbance that may have impaired her perception of the events.  *Id.*  But the purported mental disturbance did not make the plaintiff's testimony "so fantastic or inconsistent to discount it completely." *Id.*; *see also Scott*, 550 U.S. at 380 (explaining a court should not adopt a party's version of the facts if it is "blatantly contradicted by the record, so that no reasonable jury could believe it").  Nevertheless, if the inferences drawn from the evidence and relied on by the nonmovant are "implausible[,]" the court need not consider them.  *Cuesta*, 285 F.3d at 970 (internal quotation marks and citations omitted).

As in *Skelly*, the record does not support discounting one party's evidence, even if not particularly believable in light of inconsistent or self-serving sworn statements, in favor of the other party's version of the facts.  The parties here have filed competing affidavits, and disparate inferences can be drawn from the circumstantial evidence in the record.  The affidavits from inmates Anthony and Carlos serve to corroborate certain portions of Kirkland's version of events (for example, Plaintiff's filing grievances against Barnett; Barnett removing grievances from the collection box; Barnett's May 11 chemical spray of Plaintiff without cause; and Plaintiff's

---

affidavits . . . [H]owever, the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (alterations added; citations omitted).

chemical burns on his face, arms, and hands), so that completely discounting the statements or finding them implausible would be error on a motion for summary judgment.  Similarly, the declaration from Kirkland's cellmate, Velazquez, while lacking details about the incidents, generally corroborates Plaintiff's statements.

With this evidentiary framework in mind, the Court evaluates whether any genuine disputes of material fact exist precluding the summary judgment recommended in the Report. The Court addresses the claims against Defendants Barnett and Perkins, respectively.

### A. First and Eighth Amendment Violations against Defendant Barnett

#### 1. Excessive Use of Force

The Report states "the Plaintiff's version of events is not plausible given other undisputed facts . . . . Reviewing the evidence in the light most favorable to the Plaintiff, yet tempered by the plausibility of his version of events, leads to a conclusion that Defendant Barnett did not engage in the wanton and malicious use of force merely to inflict pain upon Plaintiff."  (Report 26–27). The Report arrives at the conclusion that Plaintiff's sworn statements (regarding spraying the entire can of chemical agent for a period of twenty minutes resulting in chemical burns) are implausible after considering Defendants' contrary evidence.  (*See id.* 26).  According to Barnett, he sprayed Kirkland with several one-second bursts of chemical agent.  (*See* Barnett Aff., Ex. C ¶¶ 11–12 [ECF No. 125-1]).  The Inspector General's report indicates about one-third of the can of chemical agent was discharged according to prison records.  (*See* Report 26; *see generally* OIG Report of Investigation).

Kirkland objects to each of Magistrate Judge White's determinations that there are no genuinely disputed facts surrounding the claim of excessive use of force, including the events leading up to the discharge of chemical spray, the amount and length of time the spray

discharged, and Plaintiff's resulting injuries, if any.  (*See* Report 16–18, 26; Objections ¶¶ 4–13, 17–20).  Kirkland asserts he experienced chemical burns and had difficulty breathing after exposure to the chemical agent.  (*See* Report 16; Carlos Aff., Ex. S ¶ 5 [ECF No. 139-3] (observing chemical burns on Plaintiff's face, arms, and hands)).

"To establish a claim for excessive force in violation of the Eighth Amendment, a plaintiff must show (1) that the force was sadistically and maliciously applied for the very purpose of causing harm, . . . and (2) that more than a *de minimis* injury resulted."  *Fischer v. Ellegood*, 238 F. App'x 428, 432 (11th Cir. 2007) (internal citation and quotation marks omitted).  The first element of an Eighth Amendment excessive use of force analysis contains both objective and subjective components.  The objective component of an Eighth Amendment claim is evaluated in the context of "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation marks and citation omitted).  These contemporary standards of decency are violated "[w]hen prison officials maliciously and sadistically use force to cause harm . . . whether or not significant injury is evident."  *Id.* (alterations added; internal citation omitted).  The extent of the injury remains relevant to this Eighth Amendment inquiry as it may provide an indication of the amount of force applied.  *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "'The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'"  *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9).  Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.

The Eighth Amendment use of force inquiry hinges on "the nature of the force — specifically, whether it was nontrivial and was applied . . . maliciously and sadistically to cause

harm." *Wilkins*, 559 U.S. at 39 (internal quotation marks and citation omitted).  A defendant's state of mind in applying the force is critical to determining whether excessive force was used against a plaintiff notwithstanding the absence of serious injury.  *See id.* at 37 (finding on a motion to dismiss the "core judicial inquiry . . . was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm") (citations and internal quotation marks omitted)).  Regarding this subjective component and in consideration of the *Campbell* factors[7] explained in the Report (*see* Report 21–22), "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  *Kornagay v. Burt*, No. 3:09cv281/LAC/EMT, 2011 WL 839496, at *10 (N.D. Fla. Feb. 8, 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Contrary to the Report's findings, genuine issues of material fact remain regarding Kirkland's and Defendants' versions of the facts precipitating Barnett's use of force, particularly his state of mind and justifications for using force.  *See id.*, 2011 WL 839496, at *18 (finding a genuine issue of material fact as to whether defendants had a "penological justification for spraying [plaintiff] with chemical agent" because viewing the evidence in the light most favorable to plaintiff "supports a reliable inference that their use of force amounted to an unnecessary, unreasonable, and wanton infliction of pain").  Kirkland contends in his affidavits

---

[7] The factors relevant to assessing whether force was applied maliciously include: (1) extent of the injury, (2) need to apply force, (3) relationship between the need to apply force and the force used, (4) efforts made to temper the amount of force used, and (5) extent of the perceived threat to the safety of inmates and officials.  *See Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (citations omitted).

Barnett's actions were unprovoked and carried out with the intent to harass Plaintiff.[8]  In contrast, Barnett cites Plaintiff's failure to comply with orders to make himself visible (removing the toothpaste obscuring the cell window and the mattress blocking the cell door flap), as well as his belief Plaintiff might harm himself, as justifications for spraying Kirkland.  (*See* Barnett Aff., Ex. C ¶¶ 7–14).  (*See also* Report 27).

With regard to the second element of an excessive use of force claim, the Prison Litigation Reform Act ("PLRA") also requires prisoner-plaintiffs demonstrate they suffered more than a *de minimis* injury in order to seek punitive or compensatory damages.  *See* 42 U.S.C. § 1997e(e); *Al–Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) (requiring physical injury under section 1997e(e) for plaintiff to seek punitive damages); *Harris v. Garner*, 216 F.3d 970, 979–80 (11th Cir. 2000) (explaining a prior showing of a physical injury is necessary under the PLRA for claims filed while the inmate is confined).  Courts have not considered the short-term physical injury associated with chemical spray exposure to be more than *de minimis* under section 1997e(e).  *See Kornagay*, 2011 WL 839496, at *18 (finding prisoner plaintiff failed to show more than a *de minimis* physical injury resulting from residual chemical agent in prisoner's cell that was not sufficiently decontaminated after officer's use of the agent); *Beecher v. Jones*, No. 3:08cv416/MCR/EMT, 2010 WL 5058555, at *5–6 (N.D. Fla. Oct. 29, 2010) (finding prisoner who alleged no physical injury arising from use of chemical agents failed to show requisite physical injury under section 1997e(e)); *Palmer v. Walker*, No. 2:09-cv-401-FtM-36DNF, 2011 WL 836928, at *8 (M.D. Fla. Mar. 9, 2011) (prisoner who suffered temporary eye irritation as a result of application of chemical agents failed to show more than a *de minimis* physical injury under section 1997e(e)); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir.

---

[8] Kirkland's testimony is corroborated by Anthony's testimony.  (*See* Anthony Aff., Ex. B ¶¶ 26–27, 29–36).

2004) (finding prisoner who suffered the discomfort of pepper spray had shown only *de minimis* injury, insufficient to satisfy section 1997e(e)).  If Kirkland experienced temporary chemical burns and minor respiratory problems from exposure to a chemical agent, he then sustained only minor, physical injuries from the chemical spray.[9]

But where a plaintiff suffers only a *de minimis* physical injury, nominal damages are still available.  *See Nix v. Carter*, No. 5:10-cv-256 (CAR), 2013 WL 432566, at *2 (M.D. Ga. Feb. 1, 2013) (citing *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."); *Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009)); *see also Thompson v. Quinn*, No. 3:11cv533/RV/EMT, 2013 WL 2151715, at *12 (N.D. Fla. May 16, 2013).  Consequently, if Kirkland's injury is *de minimis*, under section 1997e(e)'s heightened standard, the only damages Kirkland would be able to recover are nominal ones if he shows Barnett used excessive force. While Kirkland seeks compensatory and punitive damages (*see* Compl. ¶¶ 3, 5), he also requests additional relief the Court deems proper, and the Court construes this as a request for nominal damages.  Kirkland also seeks declaratory relief, to which he may be entitled.

The Defendant's state of mind and his justifications for the application of force are not undisputed.  If Kirkland's injuries are *de mimimis*, he is not precluded from seeking declaratory relief and nominal damages. For these reasons the undersigned does not agree summary judgment on the excessive use of force claim is appropriate.

---

[9] Despite much of the evidence showing Plaintiff received no visible or lasting physical injuries from the chemical spray administered by Barnett, Kirkland's and Carlos's affidavits indicate Plaintiff suffered injury from the events of May 11, 2012.  (*See* Carlos Aff., Ex. S ¶ 5).

### 2. Sexual Assault and Harassment

Kirkland asserts Barnett sexually assaulted him by grabbing his buttocks in an explicit and sexual manner on May 9, 2012 (*see* Compl. ¶ 12), as part of an ongoing pattern of sexual harassment, including calling Plaintiff epithets and accusing him of homosexual activities (*see id.* ¶¶ 8–10; Velazquez Aff., Ex. C ¶¶ 3–5).  (*See also* Report 29).  Kirkland's sworn statements describe the assault with added detail, noting Barnett forcibly grabbed Plaintiff's buttocks and inserted his fingers between Plaintiff's buttocks with the touching occurring only on the outside of his clothing.  (*See* Kirkland, Ex. A 5 [ECF No. 139]; Anthony Aff., Ex. B ¶¶ 22–23; Velazquez Aff., Ex. C ¶ 5).  Defendants emphasize the grabbing of Plaintiff's right buttocks for twenty seconds is the only physical injury claimed regarding the sexual assault by Barnett while he removed Kirkland's handcuffs through the cell door flap.  (*See* Mot. Summ. J. 10 (quoting Kirkland Dep. 29:2–30:16)).  Barnett denies assaulting Kirkland or touching his buttocks in any sexually explicit manner.  (*See* Barnett Aff., Ex. C ¶¶ 5–6).  Rather, Barnett states he struggled to unlock both handcuffs through the cell door flap, noting at the time Kirkland did not complain or accuse Barnett of any inappropriate touching.  (*See id.*).  These material facts would appear to be disputed.

But as explained in the Report, Plaintiff must show "severe or repetitive sexual abuse of a prisoner by a prison official [] violat[ing] the Eighth Amendment."  *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (alterations added; citations omitted).  An Eighth Amendment violation requires proof of a "sufficiently culpable state of mind" and an "objectively, sufficiently serious" injury.  *Id.* (citations omitted); *see also Washington v. Harris*, 186 F. App'x 865, 866 (11th Cir. 2006) (holding that a prisoner's allegations he suffered "momentary pain, 'psychological injury,' embarrassment, humiliation, and fear" after he was subjected to an

officer's offensive and unsolicited touching were *de minimis* injuries — not constitutional violations "repugnant to humanity's conscience" — even if the officer's conduct was inappropriate and vulgar); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (holding allegation of "rubbing and grabbing [prisoner's] buttocks in a degrading and humiliating manner[,]" corroborated by three other inmate statements after the incident, did not amount to an Eighth Amendment violation); *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (upholding the district court's finding that a few incidents involving verbal harassment, touching, and pressing without consent were not sufficiently serious to constitute an Eighth Amendment violation, while "they may potentially be the basis of state tort actions").

Kirkland has presented little evidence supporting a pattern of sexual harassment that demonstrates "severe or repetitive sexual abuse." *Boxer X*, 437 F.3d at 1111 (citations omitted). Plaintiff did not suffer physical injury, has not submitted evidence of psychological harm beyond his self-serving affidavits, and the May 9 incident is the only instance of sexual assault. Even when the facts are taken in the light most favorable to Plaintiff, the undersigned agrees with Magistrate Judge White's Report that the touching of Kirkland's buttocks and other verbal harassment by Barnett do not rise to the level of a constitutional violation under the Eighth Amendment. (*See* Report 30). The injuries asserted from Barnett's alleged verbal and physical harassment are *de minimis*. Thus, without more, Plaintiff fails to meet his burden of showing Barnett had a "sufficiently culpable state of mind," and the injury is "objectively, sufficiently serious." *Boxer X*, 437 F.3d at 1111.

In the alternative to an Eighth Amendment cause of action, Kirkland claims a Fourteenth Amendment violation as a result of the sexual assault and harassment. (*See* Objections 8). In the Objections, Kirkland re-characterizes the sexual harassment claim, previously presented as a

violation of Eighth Amendment rights, as a violation of the Fourteenth Amendment's "due process right to liberty, which includes the right to be free from sexually motivated physical assault." (*Id.* (citation omitted)).   But, "the Due Process Clause affords [a plaintiff] no greater protection than does the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("It would indeed be surprising if, in the context of forceful prison security measures, 'conduct that shocks the conscience' or 'afford[s] brutality the cloak of law,' and so violates the Fourteenth Amendment, . . . were not also punishment 'inconsistent with contemporary standards of decency' and 'repugnant to the conscience of mankind,' . . . in violation of the Eighth [Amendment]." (some alterations added; citations omitted)).   Plaintiff's arguments asserting a substantive due process violation do not alter the Court's analysis regarding the absence of an Eighth Amendment violation.

### 2.   Retaliation

Kirkland claims Barnett retaliated against him for exercising his First Amendment rights in filing grievances against Defendant.   (*See* Report 30).   In particular, Barnett searched Kirkland's cell and destroyed Plaintiff's personal property, including photographs and mail, by disposing of it in the cell toilet and removing Plaintiff's grievance forms.   (*See id.*).   Anthony's and Carlos's Affidavits corroborate Plaintiff's version of events.   (*See* Anthony Aff., Ex. B ¶¶ 14, 28; Velazquez Aff., Ex. C ¶ 8).   Defendants contend Officer Rodolfo Gonzales ("Gonzales") conducted a search of Kirkland's cell on May 11, 2012.   (*See* Report 8; Gonzales Aff., Ex. D ¶¶ 5 [ECF No. 125-2]).   Barnett was present for the search, but no items were thrown in the cell toilet by Barnett during the search.   (*See* Gonzales Aff., Ex. D ¶¶ 5, 9).   Later, Gonzales observed items in the toilet in Kirkland's cell and suspected Plaintiff had placed them there in response to the Disciplinary Report filed against him earlier that day.   (*See id.* ¶¶ 6–7, 9).

15

It is evident the parties dispute whether the items were placed in the toilet by Barnett. Kirkland also insists additional disputed facts exist pertaining to the retaliation claim. (*See* Objections ¶¶ 21–24). Kirkland objects to the Report's conclusion it is undisputed he did not file any grievances against Barnett before the May 11, 2012 search of Plaintiff's cell based on Defendants' affidavits. (*See* Objections ¶ 21; Report 31). As there is no record Kirkland filed grievances regarding Barnett before May 11, 2012 (*see* Report 15; A. Williams Aff. ¶¶ 13, 15–16 [ECF No. 125-4]), Kirkland explains Barnett must have collected and removed the grievances submitted against him before they could be stamped received and filed (*see* Report 5, 11, 31; Anthony Aff., Ex. B ¶15). But Darmaneshia Williams ("D. Williams"), the Clerk Type Specialist responsible for collecting the inmates' grievances, states inmates place the grievances in a locked box. (*See* D. Williams Aff., Ex. O ¶¶ 1–4 [ECF No. 148-3]). One of D. Williams's responsibilities was to unlock the box, collect, time stamp, and forward the grievances to the Classification Supervisor, Scott Siegler. (*See id.* ¶¶ 3–4). Williams states neither Barnett nor A. Williams has a key to the locked grievance box. (*See id.* ¶¶ 5–6).

Evaluating the facts in the light most favorable to Plaintiff, even if Barnett knew of Kirkland's intentions or efforts to file grievances against him and disposed of Kirkland's personal property, Plaintiff must still prove all the elements of a retaliation claim. Retaliation requires proof that: (1) plaintiff's speech or act was constitutionally protected; (2) the prison official's retaliatory conduct adversely affected the inmate's protected speech, such that it would "likely deter a person of ordinary firmness from engaging in such speech;" and (3) there is a causal connection between the retaliatory actions and the adverse effect on the protected speech (filing of inmate grievances).[10]  *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)

---

[10] Kirkland does not refute the elements of a retaliation claim cited in the Report. Instead, Kirkland cites additional case law to show retaliation may violate an inmate's First Amendment rights, even where the

(citation and internal quotation marks omitted); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (cited in the Report (*see id.* 31)).

From these facts, the undersigned agrees with Magistrate Judge White (*see* Report 31) that Plaintiff cannot demonstrate the retaliatory conduct adversely affected Plaintiff's protected speech and a causal connection exists between the two. *See Martinez v. Minnis*, 257 F. App'x 261, 266 (11th Cir. 2007) (finding no evidentiary support for a causal connection between plaintiff's administrative grievances and his treatment, including being subjected to "shakedowns," being fired as an orderly, being sexually assaulted, and being forced to carry heavy boxes). Kirkland simply asserts a retaliatory animus by Barnett through Plaintiff's own self-serving and conclusory affidavits. Despite Kirkland's Objections (*see id.* ¶¶ 22–23), Defendants provide evidence that several grievances were filed and subsequent investigations were carried out regarding their merits. (*See generally* Ryan Aff. 1–2 [ECF No. 126-4]; OIG Report of Investigation).

To the extent Kirkland also asserts Barnett's use of chemical spray against Plaintiff was done in retaliation, if the prison official can show he "would have taken the disciplinary action in the absence of the prisoner's protected conducted, he cannot be held liable" for First Amendment retaliation. *O'Bryant*, 637 F.3d at 1217 (citation omitted). For the same reasons a trier of fact would not find the disposal of Kirkland's property to be retaliatory, the chemical spray of Plaintiff on the same day likewise was not retaliatory in nature.

### B. Fourteenth Amendment Violation against Defendant Perkins

Kirkland states Perkins failed to reassign Barnett or otherwise ensure Plaintiff's protection from the harassment by Barnett. (*See* Report 6, 18–19). Kirkland argues Perkins's

---

retaliatory action may have been proper if undertaken for other reasons. (*See* Objections 9). This does not alter the undersigned's findings, which are consistent with those of Magistrate Judge White.

deliberate indifference subjected Plaintiff to the May 11 assault by Barnett in violation of Plaintiff's Fourteenth Amendment rights. (*See id.*). The Report concludes Perkins was not aware of the risk of serious harm because Kirkland's grievances were not received until after the May 9 and 11 incidents; as a result, there is no genuine dispute of fact. (*See id.* 19). Kirkland objects to Magistrate Judge White's determination, arguing Perkins's awareness of the risk is a disputed factual issue.[11] (*See* Objections ¶¶ 15–16).

Kirkland claims grievances against Barnett were filed by Kirkland and other inmates prior to the dates of the incidents. (*See* Report 15, 18, 30; Anthony Aff., Ex. B ¶¶ 4, 8, 10 [ECF 139]).[12] Although grievances regarding other complaints were filed, a review of the prison records yielded no grievances reporting sexual harassment or other misconduct by Barnett before May 9, 2012. (*See* Report 15; A. Williams Aff. ¶¶ 13, 15–16). To the extent there is no evidence in the record of any previously-filed grievances, again Kirkland argues Barnett intercepted the grievances before they could be officially filed against him. (*See* Report 5, 11, 31; Anthony Aff., Ex. B ¶ 15). Additionally, Kirkland asserts Perkins and Lieutenant Gregory Hines ("Hines") were made aware of Barnett's misconduct and harassment of Plaintiff from informal conversations with inmates. (*See* Carlos Aff., Ex. S ¶ 18 (noting his conversation with Perkins in May 2012); Anthony Aff., Ex. B ¶ 25 (noting his conversation with Hines on May 10, 2012); Velazquez Aff., Ex. C ¶ 6 (noting Kirkland and his conversation with Hines on May 10, 2012)). The conversations with Hines occurred after the May 9, 2012 sexual harassment, and no

---

[11] Kirkland does not object to the Report's application of the deliberate indifference standard to Plaintiff's claim against Perkins. (*See* Report 19).

[12] Anthony's grievances prior to May 9, 2012 are not specific to Plaintiff's claim of sexual harassment, and instead concern specific grievances Anthony had against Barnett. Anthony filed grievances related to Barnett's sexual assault of Kirkland and excessive use of force against him. (*See* Anthony Aff., Ex. B ¶¶ 24, 37).

Case No. 12-22302-CIV-ALTONAGA/White

specific date is identified for the May 2012 conversation between Perkins and Carlos. Defendants refute these conversations took place. (*See* OIG Report of Investigation, 44 (stating Kirkland did not notify Hines of the sexual comments Barnett made)).

As the Report observes, Plaintiff's own allegations and supporting affidavits indicate Perkins would not have been made aware of the prior sexual harassment and threats by Barnett toward Kirkland. (*See* Report, 19). The undersigned agrees with Magistrate Judge White that Kirkland cannot establish the necessary elements to state a claim of deliberate indifference against Perkins. (*See id.* 20).

## IV.   CONCLUSION

The undersigned has conducted a *de novo* review of the record, the parties' filings, and the Report. In the light of that review, the undersigned agrees in part with the analysis and recommendations stated in Magistrate Judge White's Report. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1.     The Report **[ECF No. 182]** is **ADOPTED in part**.

2.     Defendants' Motion for Summary Judgment **[ECF No. 122]** is **GRANTED in part** and **DENIED in part**. Summary judgment is entered in favor of Defendant Alonzo Perkins. A scheduling order will be entered as to the excessive force claim remaining against Defendant Barnett.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of March, 2014.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
        Steven Kirkland, *pro se*